TOWNSHIP OF DOVER, (A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY), PLAINTIFF, v. BOARD OF ADJUSTMENT OF THE TOWNSHIP OF DOVER, (A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY) AND VILLAGES OF '76, A PARTNERSHIP, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided April 19, 1977.

*Mr. Joseph L. Foster* argued the cause for plaintiff (Township of Dover, Department of Law).

*Mr. John Paul Doyle* argued the cause for defendant Board of Adjustment (*Messrs. Doyle & Oles,* attorneys).

*Mr. John F. Russo* argued the cause for defendant Villages of '76 (*Messrs. Russo & Courtney,* attorneys).

HAVEY, J. C. C., Temporarily Assigned. This action in lieu of prerogative writs was instituted by the Township of Dover against its board of adjustment and Villages of '76, a partnership and a property owner within the township.

Defendant developer applied for and received approval from defendant board of adjustment to construct a "cluster" development project consisting of 162 building lots on a tract consisting of 81.47 acres situated in the "rural" zone of the township, as delineated by the Dover Township zoning ordinance. Although such a cluster-residential type development was a permitted use within the zone, variance approval was necessary under *N. J. S. A.* 40:55–39(c), commonly referred to as a "hardship" variance, since the zone called for 16,000 sq. ft. lots and the project proposed lots of 9,000 sq. ft. In addition developer sought to apply the cluster requirements of the R.200 zone of the zoning ordinance. After public hearings defendant zoning board granted approval by resolution dated November 4, 1976.

It should be noted that all proceedings, notices and determinations made were pursuant to the law in effect prior to the application of the Municipal Land Use Law, *N. J. S. A.* 40:55D–1 *et seq.*

Defendants moved for summary judgment seeking dismissal of the complaint, arguing that plaintiff, a public body, has no standing to appeal a decision of defendant board. Plaintiff seeks, by cross-motion, judgment setting aside the variance approval, arguing that defendant board usurped plaintiff's legislative powers by granting a variance on a tract of land so large, thereby in effect, "rezoning" the area of the municipality.

■ ■ Plaintiff municipality without question has a general power to sue and be sued in its corporate name; *N. J. S. A.* 40:43–1. It is also fundamental that in our State, perhaps more than any other, the prerogative writ has been broadly made available as a comprehensive safeguard against wrongful action. *Garrou v. Teaneck Tryon Co.*, 11 *N. J.* 294 (1953); *Walker v. Stanhope*, 23 *N. J.* 657 (1957).

■ ■ The courts have recognized a broad right for the taxpayers and citizens of a municipality to seek review of local legislative action even without proof of unique financial detriment to them. *Kozesnik v. Montgomery Tp.*, 24 *N. J.* 154 (1957). The community at large, as well as the individual landowners in the particular use district, have an interest in the security of the zoning plan that may not be arbitrarily set at nought. *Beirn v. Morris*, 14 *N. J.* 529 (1954).

Examination of case law prior to the abolition of prerogative writs in our State (*N. J. Const.* (1947), Art. XI, § IV, par. 3) reflects the purpose of the prerogative writ in our judicial system. In *Ferry v. Williams*, 41 *N. J. L.* 332 (Sup. Ct. 1879), the court said:

These cases seem to indicate that with us the exception to the rule is extended so far as to justify this court in acting by mandamus, certiorari or quo warranto, at the instance of *private persons*, for the redress or prevention of public wrongs by public bodies and officers, whose official sphere is confined to some political division of the state, wherever the applicant is one of the class of persons to be most directly affected in their enjoyment of public rights and the public convenience will be subserved by the remedy desired. (at 339; emphasis supplied)

This basic common law rule permitting private citizens to maintain proceedings to correct public wrongdoing has not been extended to give the same redress to public agencies in any reported cases in this jurisdiction.

In our sister state of Connecticut it was held that a zoning officer had the power to appeal from a determination

of the zoning board which reversed his action as a zoning officer. His standing, however, was specifically authorized under the state statute which permitted the appeal by the aggrieved parties. *Bouvier v. Morgan Bd. of App.,* 28 *Conn. Sup.* 278, 258 *A.* 2d 546 (C.P. 1969).

In Massachusetts the city planning board was held to have standing to appeal to the Superior Court from a decision of the zoning board, but that appeal was also under a statute giving the right to appeal from a board decision to any municipal officer of the municipal board. *Springfield Planning Bd. v. Springfield Bd. of App.,* 338 *Mass.* 160, 154 *N. E.* 2d 349 (Sup. Jud. Ct. 1958).

Lastly, in *Kline v. Chester Tp. Bd. of Trustees,* 13 *Ohio* 205, 233 *N. E.* 2d 515, 13 *Ohio St.* 2d 5 (Sup. Ct. 1968), the court held that the board of township trustees (township committee) which had passed zoning and had openly opposed from the beginning the application for a variance, and which was present and participated in the variance hearings before the zoning board of appeals and was represented on the owners' appeal to the trial court, could properly appeal from the trial court under the statute which provided that if land is proposed to be used in violation of a zone, the township committee, the prosecuting attorney for the county, or any adjacent property owner, may institute relief. This case is also clearly distinguishable from the case at bar.

█ A comprehensive review of our case law, therefore, finds no precedent to permit plaintiff standing in this action to appeal the findings of the defendant zoning board. It is a general rule that a municipality has no standing to sue on behalf of its residents or citizens in the absence of any injury to it in its corporate capacity. *Rhyne, Municipal Law,* 790 (1957).

█ The court finds more overriding and persuasive reasons to deny plaintiff standing than mere historical limitations on the application of prerogative writs.

In *Bergen Cty. v. Port of New York Auth.*, 32 *N. J.* 303 (1960), the county brought an action against the Authority for a declaratory judgment to determine that it had no power to make leases. In holding that the county had no standing as a representative of its citizens, Chief Justice Weintraub reasoned that

To permit contests among them solely to vindicate the right of the public with respect to jurisdictional powers of other public bodies is to invite confusion in government and a diversion of public funds from the purpose for which they were entrusted. The fear is not idle or theoretical. Practical politics being what they are, one can readily foresee lively wrangling among governmental units if each may mount against the other assaults now permissable upon the initiative of the Governor, the Attorney General, or a taxpayer or citizen to vindicate the public right. (at 314)

To allow plaintiff municipality to sue defendant board in the instant case solely to vindicate the right of the public invites the undermining and breakdown of the statutory functions of the board. *N. J. S. A.* 40:55–39 clearly delineates, in subparagraphs (a), (b) and (c), *quasi*-judicial powers to hear and decide appeals, requests for specific exceptions and hardship variances. It further defines the board's power to *recommend*, in particular cases, and for specific reasons, variances in use within the particular district. These powers of the zoning board and the delineation between the administrative and *quasi*-judicial function have been considered carefully and are all defined in the leading cases of *Ward v. Scott*, 11 *N. J.* 117 (1952), and *Monmouth Lumber Co., v. Ocean Tp.*, 9 *N. J.* 64 (1952). Matters committed to the board of adjustment by statute and the exercise of its power may not in any way be altered, circumscribed or extended by the municipal governing body. *Piscitelli v. Scotch Plains Tp. Comm.*, 103 *N. J. Super.* 589 (Law Div. 1968); *Tzeses v. South Orange Bd. of Trustees*, 22 *N. J. Super.* 45 (App. Div. 1952). To allow the township committee which appoints the members of defendant board (see *N. J. S. A.* 40:55–36), to seek judicial review of a decision of a board ignores the leg-

islative intention to delineate the board's powers in this particular area of zoning and planning.

The members of the zoning board should feel free to hear and decide hardship variances in accordance with the legislative mandate without the fear or threat of judicial review being sought by the very political body which appoints and reappoints them.

The court is not unmindful of the case of *Berkeley Heights Tp. v. Berkeley Heights Tp. Bd. of Adj.*, 144 *N. J. Super.* 291 (Law Div. 1976). The court in *Berkeley Heights* concluded that *N. J. S. A.* 40:48–1, establishing the general powers of municipalities included the power to name a public advocate to represent the interest of the public at large before the zoning board. That decision does not extend to vesting in the mayor and township committee the general power to appear before and appeal from municipal boards acting within the municipality.

The court grants defendants' motion for summary judgment dismissing plaintiff township's complaint.